[887 NYS2d 11]

Frank Osowski et al., Plaintiffs, v AMEC Construction Management, Inc., et al., Defendants/Third-Party Plaintiffs-Appellants. DCM Erectors, Inc., Third-Party Defendant-Respondent.

First Department, October 8, 2009

### APPEARANCES OF COUNSEL

*Shaub Ahmuty Citrin & Spratt, LLP*, Lake Success (*Steven J. Ahmuty, Jr.*, of counsel), for appellants.

*Mauro Goldberg & Lilling LLP*, Great Neck (*Kenneth Mauro, Matthew W. Naparty* and *Anthony F. DeStafano* of counsel), for respondent.

### OPINION OF THE COURT

CATTERSON, J.

This action arises out of an accident that occurred during the construction of the New York Times Building in Midtown Manhattan. On May 13, 2005, the plaintiff Frank Osowski was seriously injured when a four-ton steel beam fell on him while he was unloading a truck at the construction project. As a result of the accident, Osowski's left leg and multiple toes on his right foot were amputated.

Prior to commencing construction on the project, on January 22, 2004, the New York Times Building, LLC (hereinafter referred to as NYTB), the owner of the building, entered into an agreement with AMEC Construction Management, Inc. (hereinafter referred to as AMEC) for construction management services for the project. Thereafter, on February 23, 2005, AMEC entered into a subcontract with DCM Erectors, Inc. (hereinafter referred to as DCM), Osowski's employer, for structural steel work at the project.

Both AMEC and DCM were enrolled in the Owner-Controlled Insurance Program (hereinafter referred to as OCIP) that NYTB had procured and implemented for the project.[1] The OCIP provided, inter alia, commercial general liability insurance,

---

1. "OCIPs . . . were developed to make the insurance programs used primarily for construction projects more equitable, uniform and efficient. OCIPs eliminate the costs of overlapping coverage and delays caused by coverage or other disputes between the parties involved in a project and, at the same time, protect all the contracting parties by bringing the risk of loss from the project

workers' compensation and employers liability insurance, and excess insurance to NYTB, AMEC and all enrolled contractors, including DCM. The OCIP contained a waiver of subrogation provision which provided that "[t]he Owner and Contractor hereby waive all rights against each other and any of their Subcontractors . . . as to claims and damages covered by insurance obtained by the Owner under its OCIP program" (emphasis added).

On May 19, 2005, Osowski and his wife commenced an action against AMEC/NYTB (hereinafter referred to as the main action). Nearly 2$^{1}/_{2}$ years later, on October 22, 2007, American International Speciality Lines Insurance Corp. (hereinafter referred to as AIG), the first-layer excess insurer, issued a written denial of coverage to AMEC/NYTB in the main action. Its ground for denial was that, inter alia, its excess policy excluded coverage for bodily injury arising out of the loading or unloading of a vehicle.

On November 21, 2007, following AIG's disclaimer of coverage, AMEC/NYTB commenced an action against DCM, for common-law contractual indemnification and contribution (hereinafter referred to as the third-party action). Notably, absent AIG's disclaimer of coverage, the third-party action would have been prohibited by the "waiver of subrogation" provision in the OCIP, as well as by the antisubrogation rule.

On December 3, 2007, AMEC/NYTB commenced an insurance coverage declaratory judgment action against AIG. DCM was permitted to intervene in the declaratory judgment action to challenge AIG's denial of coverage. On January 9, 2008, the trial court granted the Osowskis' motion for summary judgment on the issue of AMEC/NYTB's liability under sections 240 (1) and 241 (6) of the Labor Law (2008 NY Slip Op 30043[U]).

On May 20, 2008, during the damages trial in the main action, a "Confidential Settlement and Release Agreement" was made between the Osowskis, NYTB and AMEC. Pursuant to the agreement, AMEC and NYTB agreed to secure funding in the amount of $12 million payable to the Osowskis, as follows: (1) a $2 million payment from Travelers, and (2) a $10 million irrevocable, unconditional letter of credit. In exchange for the $12 million settlement, the Osowskis released AMEC/NYTB from all claims relating to the events giving rise to the main action.

---

within the insurance coverage of the OCIP." (John Loveless, *Construction Insurance: Do You Only Get What You Pay For?*, 78 NY St BJ 10, 10 [Mar./Apr. 2006].)

The following day, on May 21, 2008, counsel for the Osowskis announced, in open court, that the main action had been settled pursuant to a confidential settlement agreement with AMEC/ NYTB. Immediately thereafter, DCM informed the court that DCM had not been made privy to the details of the settlement.

At that point, DCM was still a party to the two other actions involving the Osowski accident pending before the same court (i.e., the declaratory judgment action and the third-party action brought by AMEC/NYTB). The court, acknowledging the fact that DCM was preparing for a trial in the third-party action, inquired of AMEC/NYTB's counsel, Steve Palley, as to whose interests the confidentiality clause was designed to protect.[2] Palley responded, "I can fairly say that the confidentiality provision[s] are for the benefit of all parties involved to offset the arguments we will have closing argument in front of the jury."

The proceeding concluded with counsel for DCM stating on the record that she intended to make an application for full disclosure of the settlement terms and conditions. The matter adjourned for trial in the third-party action on June 3, 2008.

In the meantime, on May 30, 2008, DCM moved to compel disclosure of the settlement agreement and all related documents. DCM asserted that without disclosure, neither DCM nor the court could determine whether the waiver of subrogation provisions were applicable, and thus, whether dismissal of the third-party action was required. DCM noted that it was unaware whether settlement had been made on behalf of one or both defendants (i.e., AMEC/NYTB and DCM), and whether the plaintiff had filed releases in favor of one, or both of them. DCM further noted that in the third-party action AMEC/NYTB would be required to demonstrate that the amount paid in settlement was reasonable. Finally, DCM asserted that statements or representations in the settlement agreement could impact on credibility issues at the time of trial.

On June 2, 2008, AMEC/NYTB filed a cross motion for a protective order barring the disclosure sought by DCM. AMEC/

---

**2.** The attorney assigned by Travelers, the primary liability insurer, to defend AMEC/NYTB in the Osowski matter was Steven Cohen. Steven Palley was retained additionally to represent the interest of AMEC/NYTB. Three attorneys from the firm of Shaub Ahmuty Citrin & Spratt, LLP were also present: (1) Timothy Capowski, Esq. was the "voice" for AIG relative to settlement discussions between AIG, AMEC/NYTB (Mr. Palley) and the plaintiffs (Kenneth Sacks, Esq.); (2) Robert Ortiz, Esq. was monitoring the trial on behalf of AIG; and (3) once settlement was reached with the plaintiffs, Steven Ahmuty, Jr., Esq. appeared on behalf of AIG to prosecute its third-party action as assignee of AMEC/NYTB.

NYTB asserted that DCM was not entitled to disclosure of the contents of the settlement agreement, except for the amount paid in settlement, which it represented was $12 million. AMEC/NYTB argued, inter alia, that since AIG had disclaimed coverage for claims in the main action, the waiver of subrogation provision did not bar AMEC/NYTB's third-party action against DCM seeking to recoup the settlement amounts in excess of the $2 million primary coverage.

Later that day, with both parties before it, the court reviewed the "Confidential Settlement and Release Agreement." Subsequently, the court directed AMEC/NYTB to turn over the agreement to counsel for DCM.

After reviewing the "Confidential Settlement and Release Agreement," DCM noted that the agreement stated only that AMEC/NYTB would "provide" the Osowskis with a $10 million letter of credit, but did not state that AMEC/NYTB would fund the letter of credit. DCM indicated to the court that the balance of the agreements must be disclosed because if it were determined that AIG was funding the settlement then the contractual waiver of subrogation provision would be triggered. The court found this argument persuasive.

On June 3rd, AMEC/NYTB was ordered to disclose the related settlement agreements. Thereupon, DCM learned the details of the related confidential "Settlement and Release Agreement" among AMEC, NYTB and AIG. DCM discovered that: (1) AIG agreed to provide AMEC/NYTB with an irrevocable letter of credit in the amount of $10 million designating the Osowskis as intended beneficiaries, (2) AMEC/NYTB agreed to dismiss the declaratory judgment action, with prejudice, and to release all claims and actions against AIG for any matters connected to the Osowski action, (3) AMEC/NYTB agreed to assign to AIG any and all claims it had against any person or entity arising out of or in connection with the Osowski action, including but not limited to the claims in the third-party action,[3] and (4) AMEC/NYTB agreed that settlement was without prejudice to AIG's disclaimer of coverage with respect to the third-party action, and that such disclaimer "remain[ed] in full force and effect."

Consequently, DCM made an oral motion to dismiss the third-party action. AMEC/NYTB's counsel objected to the oral mo-

---

**3.** It was expressly agreed that the rights conveyed to AIG by this latter provision represented an assignment, not subrogation.

tion, asserting that DCM's motion was one for summary judgment and, thus, should be made on papers. The court then granted a continuance to June 5, 2008 for "an offer of proof in the trial."

After the parties reconvened on June 5, DCM made an offer to support its previously articulated motion to dismiss. DCM concluded that by virtue of the confidential settlement agreement and associated documents:

> "there was, in fact, insurance that covered the loss; that there has been a promise and payment of those damages and, therefore, based upon the provisions in the contract that are now in evidence, the waiver of subrogation provision bars completely the pursuit of the third-party claim against DCM."

AMEC/NYTB countered that AIG had not rescinded its disclaimer, and nothing in the confidential settlement agreement and associated documents stated or implied otherwise. AMEC/NYTB concluded, "it's [DCM's] position that this set of agreements constitutes insurance. We disagree."

The trial court dismissed the third-party complaint on the ground that NYTB had not sustained any damages that would trigger a common-law right of indemnification against DCM. The court interpreted the settlement documents as the legal equivalent of insurance because "[AMEC/NYTB] will [never] be out-of-pocket a penny." Thereafter, the trial court severed the third-party action from the main action, ordered the entry of a judgment dismissing AMEC/NYTB's third-party complaint, and dismissed DCM's breach of contract counterclaim as moot.

On appeal, AMEC/NYTB argues that the trial court abused its discretion in ordering disclosure of the confidential settlement agreements. Furthermore, AMEC/NYTB contends that AIG's disclaimer was not mooted by the confidential settlement agreements. AMEC/NYTB asserts that since AIG disclaimed coverage for "claims and damages" in the main action as not "covered" under the AIG policy, the waiver of subrogation did not bar AMEC/NYTB's third-party indemnity action against DCM seeking to recoup settlement amounts in excess of Travelers' $2 million primary policy. Additionally, AMEC/NYTB argues that the trial court erred in entertaining DCM's oral application.

For the reasons set forth below, we find that AMEC/NYTB's assertions are without merit, and affirm the judgment.

■ Pursuant to CPLR 3101, it was proper for the trial court to compel disclosure of the "Confidential Settlement and Release Agreement" between the Osowskis and AMEC/NYTB/AIG, the "Letter of Credit," and the "Settlement and Release Agreement" between AMEC/NYTB and AIG because these agreements were "material and necessary" to the issues raised in the third-party action.

According to CPLR 3101 (a), "full disclosure of all matter material and necessary in the prosecution or defense of an action" is required. In *Allen v Crowell-Collier Publ. Co.* (21 NY2d 403 [1968]), the Court of Appeals interpreted the CPLR phrase "material and necessary" to mean nothing more or less than "relevant." (*Id.* at 407.) The Court stated that the phrase must be "interpreted liberally to require disclosure, upon request, of any facts bearing on the controversy which will assist preparation for trial by sharpening the issues and reducing delay and prolixity." (*Id.* at 406.) The Court concluded that the "test is one of usefulness and reason." (*Id.*) Thus, disclosure of the terms of a settlement agreement by a settling party to a nonsettling party may be appropriate, despite the presence of a confidentiality clause in the agreement, where the terms of the agreement are "material and necessary" to the nonsettling party's case. (*Masterwear Corp. v Bernard*, 298 AD2d 249, 250 [1st Dept 2002]; *see* Connors, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR C3101:18A ["(t)he central inquiry in resolving . . . disclosure requests (regarding settlement agreements) should focus on relevance"].)

There can be no question that in the instant case, the confidential settlement materials were properly ordered to be disclosed. The third-party action was based on a premise that AMEC and NYTB were "passively negligent" tortfeasors whose payment to the Osowskis in the underlying suit entitled them to seek indemnification from DCM, the subcontractor alleged to have control of the work giving rise to Osowski's injury. Thus, the question of who funded the settlement of the main action was critical to whether AMEC/NYTB could continue to maintain the third-party action. In other words, if AMEC/NYTB's alleged losses were not "out-of-pocket," no suit could be maintained for common-law or contractual indemnification, either by AMEC/NYTB or by AIG as its assignee.

AMEC/NYTB's reliance on *Matter of New York County Data Entry Worker Prod. Liab. Litig.* (162 Misc 2d 263 [Sup Ct, NY County 1994], *affd* 222 AD2d 381 [1st Dept 1995]) is misplaced.

That case involved a repetitive stress injury action against multiple defendants involving multiple claims of contribution. This Court found that the nonsettling defendants were not entitled to discover the terms of confidential settlement agreements entered into between the plaintiffs and the codefendants because the terms of agreement were not material to the resolution of the issues involved in the case. Specifically, we concluded that other than the amount of settlement, a confidential settlement between the plaintiffs and the codefendants had no relevance to a possible postverdict apportionment under General Obligations Law § 15-108. (222 AD2d at 382.) Here, however, the settlement of the main action directly bears on the underlying issue of fault and damages since the third-party action was one for *indemnification* and was necessarily predicated on the fact that AMEC/NYTB was "out-of-pocket" for a loss which should have been borne by DCM.

■ Furthermore, we find that the trial court did not abuse its discretion in entertaining DCM's oral motion to dismiss. There is no per se rule against oral motions, so long as a movant makes a proper evidentiary showing. (*See e.g. Rosado v Proctor & Schwartz*, 66 NY2d 21 [1985] [affirming order which granted third-party defendant's oral application, on the eve of trial, to dismiss indemnification claim].) Indeed, the motion was made on an evidentiary record sufficient for a determination, and defendants/third-party plaintiffs had ample notice and opportunity to respond to it. Since the motion was prompted by revelation of the terms of the settlement that had been reached in the main action, defendants/third-party plaintiffs cannot claim to be surprised by it.

■ Moreover, we find that the trial court's ruling on the motion was correct. In funding the $10 million for the letter of credit, AIG effectively paid on the policy on which it had disclaimed. As a result, it foreclosed any claims AMEC/NYTB could have pursued against DCM in any third-party action because AMEC/NYTB was not out of pocket in connection with the settlement. Thus, AMEC/NYTB had no claims left to pursue or to assign to any other party, least of all to AIG since the effective payment on the policy triggered the waiver of subrogation clause.

The fact that the confidential agreement between AMEC/NYTB and AIG purported to keep AIG's disclaimer alive by stating that the disclaimer remained "in full force and effect" is irrelevant. The only possible way that AIG's disclaimer could

have remained "in full force and effect" was if AIG and AMEC/NYTB had executed a reservation of rights agreement whereby AIG agreed to fund the $10 million in order to cap the damages, but if a subsequent action determined that its disclaimer was indeed valid, then AMEC/NYTB would owe that amount to AIG. In that situation, AMEC/NYTB would be in a position to bring the third-party action against DCM, or even to assign its claim. Quizzed on this very point at oral argument, AIG conceded that no such explicit reservation of rights agreement was in place.

Indeed, the fiction of the disclaimer was belied by AIG's funding of the $10 million letter of credit on condition that AMEC/NYTB agreed not to pursue its declaratory judgment action against AIG. In other words, both AMEC/NYTB and AIG stipulated away the possibility of adjudicating the validity of the disclaimer. Thus, they created a situation where AMEC/NYTB could never find itself in a position of owing the $10 million to AIG, and thus would never be in a position to pursue its action against DCM or to assign its claim to AIG. Indeed, as DCM asserts, the fiction of the disclaimer was nothing more than an attempt to circumvent the waiver of subrogation clause and thus AMEC/NYTB's contractual obligation. As such, AIG's arguments against disclosure of the agreement between it and AMEC/NYTB cannot be viewed as anything but a clear attempt to perpetrate a fraud on the court.

Moreover, counsel for AIG appears to have acted in disregard of well-established discovery rules and demonstrated a lack of forthrightness and candor to the court by failing to come forward with the terms of the settlement agreement which directly concerned DCM's defense in the third-party action. We believe that counsel's continued prosecution of the third-party action against DCM after AMEC/NYTB entered into the settlement agreements raises substantial questions under the Code of Professional Responsibility.

Accordingly, the judgment of the Supreme Court, New York County (Jane Solomon, J.), entered July 21, 2008, inter alia, dismissing the third-party complaint, should be affirmed, with costs. The appeals from the orders of the same court and Justice, entered June 4, 2008 and June 23, 2008, respectively, should be dismissed, without costs, as subsumed in the appeal from the judgment. The Clerk is directed to refer the matter of the conduct of Steven Ahmuty Jr., Esq. to the Departmental Disciplinary Committee.

SAXE, J.P., McGUIRE, MOSKOWITZ and ACOSTA, JJ., concur.

Judgment, Supreme Court, New York County, entered July 21, 2008, affirmed, with costs. Appeals from orders, same court, entered June 4, 2008 and June 23, 2008, dismissed, without costs, as subsumed in the appeal from the judgment. The Clerk is directed to refer the matter of the conduct of Steven Ahmuty Jr., Esq., to the Departmental Disciplinary Committee.