IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 34183-6-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| JESSE JAMES LUNA, JR., | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

FEARING, C.J. — Jesse Luna appeals the trial court's refusal to permit the

withdrawal of a guilty plea. He argues that he was confused as to the difference between

a consecutive sentence and a concurrent sentence, his trial counsel performed

ineffectively by failing to properly advise him during plea negotiations, and that the trial

court erroneously denied him a factual hearing on his motion to withdraw. We reject

Luna's contentions and affirm the denial of his motion to withdraw.

## FACTS

Although the procedural outline of this prosecution holds more importance to this

appeal, we relate some of the underlying circumstances of the crime. On May 23, 2013,

at 11:41 p.m., a robbery occurred at a Zip Trip store on the corner of Wellesley Street and

Monroe Street in Spokane. While working on paperwork behind the counter, the clerk on

duty, Dallas Tibbets, noticed a short Hispanic male enter the store and proceed to stand in

front of the counter as if ready to buy something. Tibbets ambled to the cash register to help him. In a calm voice, the man told Tibbets, "[y]ou've got five seconds to give me all your money." Clerk's Papers (CP) at 1, 33. The robber warned Tibbets that, if he did not surrender the money, the robber would shoot him. The man started counting down from five. Tibbets opened the cash register and handed the robber bills and coins.

While Dallas Tibbets relinquished the money, his coworker, Darla Enquist, walked to the cash register to ask Tibbets a question. The robber ordered Enquist to lay on the ground and to look away. Enquist complied. The man then demanded money from Tibbets' wallet. Tibbets removed his empty wallet from his pants and displayed its barrenness. Before leaving the store, the robber cautioned Tibbets and Enquist that, if one of them provided his description to police, he would return and harm them.

Either Dallas Tibbets or Darla Enquist reported the robbery to emergency dispatch, and Spokane Police Officer Adam Potter responded to the Zip Trip store. Officer Potter viewed the store's surveillance video and observed the suspect committing the robbery. Potter also interviewed Tibbets and Enquist. Both store employees described the suspect as a five foot, one inch Hispanic male with a cursive writing tattoo, one-half inch in height, on the left side of his neck. The robber wore a black baseball cap, a black jacket, and black pants.

During the evening of May 24, 2013, Police Officer Adam Potter assembled a photograph montage of possible robbery suspects. Based on the video surveillance and

2

the witness's descriptions, Officer Potter considered Jesse Luna as a suspect. Potter

knew Luna from earlier encounters. Officer Potter showed Dallas Tibbets and Darla

Enquist the photomontage that included Luna's picture. Both victims identified Luna as

the robber.

## PROCEDURE

The assignments of error on appeal surround the lengthy procedure before the trial

court. The State of Washington initially charged Jesse Luna with two counts of second

degree robbery and two counts of intimidating a witness. On May 29, 2013, Luna

appeared in Spokane County Superior Court, represented by defense counsel Todd

Porter. The trial court scheduled an arraignment date for June 11, 2013. The court

remanded Luna to the custody of the Spokane County jail and ordered a $100,000 bond.

Luna remained in custody throughout the proceedings.

On June 5, 2013, before arraignment, the State filed an amended information that

added one count of bail jumping. On June 11, 2013, the trial court arraigned Jesse Luna.

We lack a copy of the arraignment transcript and do not know if counsel assisted Luna at

the hearing. A scheduling order set trial for September 3, 2013. No defense attorney

signed the scheduling order. The next day, on June 12, the State presented a most serious

offense notice, which notified Luna that, if convicted, he may be classified as a persistent

offender and sentenced to life without parole. On June 13, defense counsel, Kevin

Griffin, filed a notice of appearance.

3

The trial court subsequently entered numerous scheduling orders that continued the trial date. On August 19, 2013, the trial court postponed the trial date to September 30, 2013. The postponement order reflects a party requested the continuance for negotiations, but the order does not identify the requestor. Jesse Luna personally signed the order. On September 13, 2013, the trial court delayed the trial until November 4, 2013, for continued discovery and negotiations. Luna signed the September 13 order. On October 18, 2013, the trial court continued trial, for continued discovery and negotiations, to December 9, 2013. Luna signed this order.

On November 21, 2013, Jesse Luna requested a trial postponement. The trial court, finding good cause, granted Luna's request and continued the trial to December 16, 2013. The court instructed the defense that it must notify the State of any "issues" by November 26, 2013. We do not know the nature of any "issues." Luna signed the November 21 order.

For an unknown reason, trial did not proceed on December 16, 2013. On February 6, 2014, the trial court rescheduled the trial date because the defense had yet to supply a witness list. Jesse Luna signed an order postponing the trial until February 24, 2014.

On February 10, 2014, the State of Washington filed an amended information that changed the second degree robbery charge to a first degree robbery accusation with a deadly weapon enhancement. The second amended information retained the two counts of witness intimidation and the bail jumping charge. On February 10, Jesse Luna served

4

notice that he intended to rely on an alibi defense. On the same day the trial court also entertained Luna's motions to suppress an alleged impermissibly suggestive identification and to exclude in-court identification. The court denied the motions.

On February 24, 2014, on the first day of trial, the trial court allowed Jesse Luna's defense counsel, Kevin Griffin, to withdraw because of ethical concerns. We lack a transcript for February 24. The trial court also, in order for Luna to obtain new counsel, continued the trial to May 19, 2014. The February 28 scheduling order reflects that Luna "refused to appear" and was in custody. Clerk's Papers (CP) at 27. Luna did not sign the order. Thereafter, on an unknown date, the trial court appointed Eric Christianson to represent Luna.

On May 5, 2014, the trial court stayed the prosecution and directed Eastern State Hospital to evaluate Jesse Luna's competence to stand trial. On August 22, 2014, Eastern State Hospital filed its report with the court. In the report, Dr. Daniel Lord-Flynn concluded that Luna enjoyed the capacity to understand the court proceedings and to participate in his own defense. Accordingly, on September 2, 2014, the trial court lifted the stay. The court rescheduled trial for November 3, 2014. Luna signed the September 2 order.

On October 9, 2014, Jesse Luna requested a trial continuance to accommodate his defense counsel's schedule and to afford additional time for trial preparation. The trial court granted Luna's request and reset trial for March 2, 2015. On January 9, 2015, Luna

5

filed a motion to dismiss based on alleged misconduct by the State. On February 6, 2015, the trial court denied the motion to dismiss.

On February 12, 2015, defense counsel filed a motion requesting a trial continuance for time to interview Jesse Luna's designated witnesses. The State objected. The court denied the motion for trial postponement.

On February 25, 2015, less than one week before the March 2 trial date, Jesse Luna's defense counsel, Eric Christianson, moved to withdraw as counsel. The trial court denied Christianson's motion. The court directed counsel to at least represent Luna at the beginning of trial and withdraw later if necessary. Luna could then represent himself without an attorney with Christianson functioning as standby counsel. At the trial court's request, Christianson, on March 2, filed a sealed declaration explaining the circumstances for his withdrawal request. In his declaration, Christianson disclosed a conflict between his duty to advocate for his client and his duty to refuse to offer evidence he reasonably knew was false.

On the trial date of March 2, 2015, the State of Washington filed a second amended information that charged Jesse Luna with (1) one count of second degree burglary, (2) one count of first degree theft, and (3) one count of intimidating a witness. During the morning of trial, the trial court noticed the State and defense counsel trading notes. In response to a trial court inquiry, the attorneys advised that they may have reached a resolution, but needed time to prepare paperwork and for defense counsel to

6

review the papers with Luna. The court granted the request, and the hearing recessed for an hour.

After the recess on March 2, the State filed a third amended information that charged (1) one count of second degree burglary, (2) one count of first degree theft, and (3) one count of intimidating a witness. In turn, defense counsel provided the trial court with a written statement on plea of guilty to the amended charges. The plea statement identified Luna's offender score as 9+. Jesse Luna signed the written plea statement. In bold and underlined language, Paragraph 6(h) of the plea agreement asserted:

> **There is an agreed recommendation of 30 years in prison; Ten years on each count, to run consecutively. Defendant understands that this sentence is outside the standard sentencing ranges, and that he has agreed to an exceptional sentence above the range to accommodate this sentence. Defendant also understands that these sentences are presumptively calculated to run concurrently, but that there is an agreement under the exceptional sentencing statute to run the sentences consecutively.**

CP at 140 (emphasis in original).

During the March 2 hearing and pursuant to CrR 4.2(e), the parties submitted an "UNDERSTANDING OF DEFENDANT'S CRIMINAL HISTORY" that recorded the State's knowledge of Jesse Luna's criminal history. CP at 148-49. The document listed Luna's numerous past felony and misdemeanor convictions including, but not limited to, assault in the second degree, robbery in the first degree, theft in the second degree, burglary in the second degree, domestic violence assault, and rioting. Some of these

7

convictions subjected Jesse Luna to a possible lifetime sentence.

On March 2, 2015, defense counsel, in open court, confirmed Jesse Luna understood the amended charges and his statement on guilty plea. The trial court then asked defense counsel:

> But have there been some negotiations going on in the past or is this something that just happened today?

Report of Proceedings (RP) at 16. The court added that it wished to know the amount of time afforded to Luna to evaluate the plea agreement. Defense counsel confirmed the existence of negotiations, but did not delineate the length of the negotiations or identify the window of time available to Luna to contemplate the plea.

The trial court, on March 2, next engaged in a colloquy with Jesse Luna. Luna declared that he (1) read and understood the documents he signed, (2) he understood the amended charges, (3) he understood the rights he waived when entering a plea, (4) he understood the standard range and maximum penalties for the crimes charged, (5) he agreed with his criminal history presented by the State, and (6) he understood the State and his counsel would recommend an exceptional sentence of a prison term of thirty years, ten years on each count to run consecutively. The following discussion occurred with regard to the consecutive sentence recommendation:

> THE COURT: All right. Mr. Luna, in return for your plea of guilty to these charges, I understand that there is a joint recommendation that you, your attorney, and the state are asking me to follow. The agreed

recommendation would be for 30 years in prison, 10 years on each count to run consecutively.

This states that you understand this sentence is outside the standard sentencing ranges and that you have agreed to an exceptional sentence above the range to accommodate this sentence. It says the defendant also understands that these sentences are presumptively calculated to run concurrently, which means all at the same time, but that there is an agreement under the exceptional sentencing statute to run the sentences consecutively.

. . . .

THE COURT: All right. And then they're going to dismiss the bail-jumping charge. Is that your understanding of what the recommendations are going to be?

MR. LUNA: Yes, that's my understanding.

THE COURT: All right. Do you understand I don't have to follow those recommendations? I'm free to sentence you to any sentence authorized by law. Of course, these are maximum sentences. So do you understand that, though, first?

MR. LUNA: Yes, I understand that.

CP at 21-22.

On March 2, 2015, the trial court accepted Jesse Luna's *Alford* and *Barr* pleas of guilty, while finding that Luna voluntarily, intelligently, and knowingly entered the pleas. The court scheduled Luna's sentencing to April 23, 2015.

On March 4, 2015, Jesse Luna notified defense counsel Eric Christianson that he wished to withdraw his guilty plea. Luna contended that ineffective assistance of counsel led to his guilty plea. Accordingly, prior to the sentencing hearing and on April 17, 2015, defense counsel again petitioned the trial court to withdraw as Luna's attorney. In a declaration supporting the petition, Christianson informed the court that the Rules of Professional Conduct precluded him from writing a motion to withdraw his guilty plea

9

based on his alleged ineffective assistance of counsel. The trial court granted

Christianson's motion and ordered the Spokane County Public Defender's Office to

procure Luna new counsel. The trial court then appointed Timothy Trageser as Luna's

new counsel.

On April 23, 2015, the original sentencing date, the trial court granted new defense

counsel a continuance of the sentencing hearing to May 7, 2015. We lack the transcript

from the April 23 hearing. Either at this hearing or shortly thereafter, Jesse Luna entered

an oral motion to withdraw his guilty plea. Defense counsel did not file a written motion.

The State responded to Luna's oral request to withdraw his guilty plea with a written

memorandum.

At the rescheduled sentencing hearing of May 7, 2015, the trial court recalled that

Jesse Luna sought to withdraw his plea, and the court questioned why it had not seen a

motion to withdraw the plea. The trial court noted that the State filed a response to

Luna's oral request. Luna's defense counsel declared that the question of whether Luna

understood the recommended sentence required a factual hearing. According to counsel,

Luna claimed he understood, when entering the plea of guilty, that prior defense counsel

could argue for concurrent, instead of consecutive, sentences. Counsel stated:

> And I have examined carefully the plea agreement, and I know what
> it says. And I have, as I indicated, spoke to counsel who represented Mr.
> Luna. But, however, having talked to Mr. Luna about this, there is a
> genuine issue that I believe the Court should address, and that is whether or

10

not Mr. Luna was under some confusion, not withstanding [sic] the clear language of the plea agreement.

What I'm talking about is—are the oral representations Mr. Luna has told me occurred at the time of this plea, specifically that counsel was free to argue these matters could run concurrent. And in fact, as I understand it, the charges were amended to three class B felonies, properly-related offenses, and that—nonviolent offenses. And the purpose of doing so was to avoid a mandatory life sentence without the possibility of parole.

It was Mr. Luna's understanding that counsel was still free to argue that these cases could run concurrent, and that in fact was the reason for the delay was to prepare for a sentencing hearing to make and deliver all of the information necessary to the Court to sentence and make a determination as to whether or not these offenses should run concurrently, specifically bringing in family members, Mr. Luna making a decision as to whether or not he should take the stand.

And I'm not the finder of fact, but I can tell you that if I thought and believed I was proffering false statements and things that I believed not to be true as clear as day, I would move to withdraw, claiming that I have a conflict of interest. But in speaking with my client, he is adamant, adamant, that it was his understanding that counsel was free to argue concurrent.

He described the situation at counsel table when the decision was made and the parties going back and forth. And I'm not alleging any intentional misconduct by anybody. I am just indicating that my client believed that they were going to come back for sentencing and that his counsel was free to argue concurrent.

And I'll just summarize this. My client has specifically said that counsel stated to him, "Don't worry. It's okay. We are—we can ask the Court to run these concurrently." And so that's where I stand now.

Now, I only spoke to Mr. Christianson, I don't know, last week, probably five days ago, and so I haven't had a chance to file an appropriate motion with the appropriate affidavits and whether or not they should be sealed, but I'd like some additional time for that. I haven't been on the case that long. It's a really serious matter, Judge, as you know, and my client is subjected to a 30-year sentence.

RP at 34-35.

11

The State responded that, if Jesse Luna wanted to withdraw his plea and proceed to a third strike trial on the original charges, it would agree. The State, nonetheless, expressed frustration that Luna created conflicts with defense counsel and engaged in gamesmanship.

During the May 7 hearing, the trial court iterated:

> The reason I'm pausing here, Counsel—I'll just say this to everyone. I recall, because it wasn't that long ago, fairly vividly the sequence of events that happened in this case on March the 2nd, the day that we were here for trial and we were discussing certain pretrial motion practice. And Mr. Luna wrote a note, handed it to his attorney. His attorney then turned and whispered to the prosecutor, who was Mr. Treppiedi at the time and we took a pause, kind of, in the proceedings, and I asked whether the parties needed some time to talk in private.
>
> . . . .
>
> One of the questions I asked Mr. Christianson before we started was whether or not these were some discussions that had come up just that morning or whether these were some ongoing plea negotiations, and Mr. Christianson advised that there had been some negotiations that had been going on. . . .
>
> . . . .
>
> THE COURT: But in terms of what the agreement was, I think this is clear and unequivocal. I questioned Mr. Luna if that was his understanding. He gave me an unequivocal answer that it was. I also asked him whether he had had sufficient time to discuss this with his attorney. He said he did. Again, that's a standard question I ask in every plea agreement. And so I just think that's fairly overwhelming evidence that this was an unequivocal understanding that it wasn't going to run concurrently.
>
> Now, again, even if Mr. Luna says, "Well, the Court doesn't have to follow that recommendation so therefore I'm free to argue that it should just be 10 years," I think they're free to argue that at sentencing now. But this is what the plea agreement said, and I don't see that meeting the standard—that this was a—I don't think this comes close to any manifest injustice, which would be the burden on Mr. Luna.

. . . .

THE COURT: But Mr. Luna could probably say anything he wants in his allocution.

MR. CIPOLLA [State's attorney]: Mr. Luna could do whatever Mr. Luna wants. We've gone through that already.

. . . .

THE COURT: And I'm not saying that there is some sort of agreement to argue anything differently. I'm just saying that there's always a caveat that the Court does not have to follow those recommendations and that, at some point, allows, either on my own request or my own discretion, for me to say I'm not going to follow it, or it allows Mr. Luna during allocution to say whatever he may wish to say.

But this, to me, is powerful. I mean, this was not, you know, we're agreeing to 10 years just consecutive, because then I guess somebody could argue, Well, what does consecutive mean versus concurrent? Those are terms of art that I always have to pause before I say it to make sure I'm getting them right and not mixing them up. But when you start off, "There is an agreed recommendation of 30 years in prison, 10 years on each count to run consecutively," that doesn't appear to be ambiguous to me in any way.

RP at 39-44. The trial court confirmed that, during the March 2 hearing, it "carefully" reviewed the statement of guilty with Jesse Luna. During that hearing, the trial court read verbatim the sentencing recommendations found in paragraph 6(h) of the plea statement. During the May 7 hearing, the trial court reread for Jesse Luna paragraph 6(h) and emphasized the language of consecutive sentences.

Near the conclusion of the May 7 sentencing hearing, the trial court commented that Jesse Luna does not come close to the manifest injustice needed to withdraw a plea. The court commented:

But in terms of what the agreement was, I think this is clear and unequivocal. I questioned Mr. Luna if that was his understanding. He gave

13

me an unequivocal answer that it was. I also asked him whether he had had
sufficient time to discuss this with his attorney. He said he did. Again,
that's a standard question I ask in every plea agreement. And so I just think
that's fairly overwhelming evidence that this was an unequivocal
understanding that it wasn't going to run concurrently.

RP at 41. The court concluded that a fact-finding hearing would not change the outcome

of the motion to withdraw the plea.

During the May 7 hearing, the trial court reminded the parties that it need not

follow the sentencing recommendation in the plea agreement. The court also noted that,

if Luna wished to request concurrent sentences, he may do so in his allocution.

During his allocution, Jesse Luna informed the trial court that he understood

sentencing, but that his defense counsel, Eric Christianson, lied to him by telling him that

he could argue concurrent sentences and that the "judge can do anything he wants." RP

at 62. The trial court asked Luna multiple questions including whether he recalled the

court reading him the agreed sentencing recommendations, whether he recalled telling the

court he received no promises to induce his plea, and whether he remembered the court

asking whether he read and understood the plea agreement in its entirety. Luna answered

all of these questions in the affirmative. Luna, however, insisted that he would have

never agreed to a thirty-year sentence if his counsel had not prevaricated. He added:

So as far as consecutive and concurrent, the only other thing I
understood about consecutive and concurrent sentence is that if it's the
same course of conduct and happened at the same time and there was [sic]
no acts of cruelty and no aggravating factors stipulated by the state, which
there was none, I understood that it . . . would be run concurrently.

14

RP at 63. Luna asked the court to run the ten-year sentences concurrently.

At the end of the May 7 hearing, the trial court sentenced Jesse Luna to the agreed thirty-year sentence. The court found that the sentence, while substantial, was reasonable in light of the life sentence Luna faced had he been convicted of the original offenses. On May 7, 2015, the trial court entered a felony judgment and sentence and findings of fact and conclusions of law supporting the agreed exceptional sentence.

## LAW AND ANALYSIS

*Issue 1: Whether Jesse Luna's first trial counsel was ineffective when he failed to object to untimely trial settings?*

*Answer 1: No.*

Jesse Luna contends his respective trial counsel provided him ineffective assistance of counsel more than once. He first argues that his first trial counsel performed deficiently when counsel failed to object to an erroneously scheduled trial date. Luna claims this failure denied him his right to be brought to trial within sixty days of his arraignment. The State argues that Luna failed to demonstrate that counsel did not discuss the untimely trial setting with him and the procedure for objecting to the hearing date. We reject Luna's claim since counsel probably withheld an objection to trial postponements based on legitimate trial strategy.

15

A claim of ineffective assistance of counsel requires a showing that (1) counsel's performance was deficient, and (2) the deficient performance prejudiced the defendant. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); *State v. Grier*, 171 Wn.2d 17, 32-33, 246 P.3d 1260 (2011); *State v. Hamilton*, 179 Wn. App. 870, 879, 320 P.3d 142 (2014). The State argues that Jesse Luna fails to satisfy either prong of the test. We rely only on the first prong. If one prong of the test fails, we need not address the remaining prong. *State v. Hendrickson*, 129 Wn.2d 61, 78, 917 P.2d 563 (1996). The question of ineffective assistance of counsel presents a mixed question of law and fact that we review de novo. *Strickland v. Washington*, 466 U.S. at 698.

For the deficiency prong, this court bestows great deference to trial counsel's performance and begins the review with a strong presumption of counsel's effectiveness. *State v. West*, 185 Wn. App. 625, 638, 344 P.3d 1233 (2015). Deficient performance is performance that falls below an objective standard of reasonableness based on consideration of all the circumstances. *State v. McFarland*, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995). The appellant bears the burden to prove ineffective assistance of counsel. *State v. McFarland*, 127 Wn.2d at 335. Legitimate trial strategy and tactics cannot support a finding of deficient performance. *State v. McFarland*, 127 Wn.2d at 336; *State v. Garrett*, 124 Wn.2d 504, 520, 881 P.2d 185 (1994).

A defendant has a right to a speedy trial under the Sixth Amendment to the United States Constitution and article I, section 22 of the Washington State Constitution. *In re*

16

*Personal Restraint of Saunders*, 153 Wn. App. 209, 216, 220 P.3d 1238 (2009). A court rule also protects the timely trial right. Under CrR 3.3(b)(1)(i), an accused held in custody pending trial must be tried within sixty days of arraignment. The court rule's requirement, however, is not a constitutional mandate. *State v. Carson*, 128 Wn.2d 805, 821, 912 P.3d 1016 (1996); *In re Personal Restraint of Saunders*, 153 Wn. App. at 216-17. The calculation of the speedy trial period excludes the time allowed based on valid continuances and other delays. CrR 3.3(e)(3). When the applicable speedy trial period has expired without a trial, the trial court must dismiss the charges. CrR 3.3(h).

Any party objecting to a trial date on speedy trial grounds must do so within ten days after receiving notice of the trial setting. CrR 3.3(d)(3). Any party who fails, for any reason, to make this motion loses the right to object to a violation. CrR 3.3(d)(3). Defense counsel bears some responsibility for timely asserting a client's speedy trial rights under CrR 3.3. *State v. Carson*, 128 Wn.2d at 819. The trial court arraigned Jesse Luna on June 11, 2013 and scheduled trial for September 3, 2013. The September 3 trial date lies eighty-four days after the arraignment. Under CrR 3.3(b)(1)(i), the trial court should have scheduled trial within sixty days of June 11 or by August 10, 2013. We do not know whether any counsel represented Luna at the arraignment, when the trial court scheduled trial, because the June 11 scheduling order lacks defense counsel's signature, and we lack a transcript from the arraignment hearing. When Jesse Luna first appeared in

17

court, on May 29, 2013, defense counsel Todd Porter assisted Luna, but Porter, to our knowledge, never entered a formal notice of appearance.

Kevin Griffin filed a notice of appearance on June 13, two days after arraignment and after the trial court's setting of the trial date. We do not know whether Griffin, as of June 13, knew of the scheduling of trial beyond CrR 3.3(b)'s sixty-day rule. Nevertheless, eight days remained for Griffin, on behalf of Jesse Luna, to object to the untimely trial date. No evidence suggests Griffin objected to the trial date orally or in writing. Furthermore, no evidence documents any discussions between Griffin and Luna regarding the untimely trial setting. On August 19, 2013, nine days after the expiration of the speedy trial period expired, Griffin, on behalf of Luna, requested a continuance of the September 3 trial date.

If the record lacked a history of later trial postponements requested on behalf of Jesse Luna, we might consider trial counsel's failure to timely assert the speedy trial rule to constitute professional error. Nevertheless, the record shows nine trial continuances. Jesse Luna specifically requested the continuance on three occasions. He either requested or agreed to a continuance on the other six occasions. We can reasonably surmise that defense counsel, in August 2013, did not assert the speedy trial rule because of the need for discovery and trial preparation. Attorney Kevin Griffin knew of Luna's long criminal history, his high offender score, and the State's intent to seek a sentence of

18

life without parole, all factors showing a need for extensive preparation, if not tactical

delay to gain a favorable plea agreement.

Additional principles support our ruling that counsel did not engage in

professional error. To rebut the presumption of trial counsel competence, a defendant

must establish an absence of any legitimate trial tactic that would explain counsel's

performance. *State v. Grier*, 171 Wn.2d at 33 (2011); *In re Personal Restraint of Davis*,

188 Wn.2d 356, 371, 395 P.3d 998 (2017). Competency of counsel is determined based

on the entire record below. *State v. McFarland*, 127 Wn.2d at 335 (1995); *State v. White*,

81 Wn.2d 223, 225, 500 P.2d 1242 (1972).

*Issue 2: Whether Jesse Luna's third trial counsel was ineffective when he failed to
file a written motion to withdraw the guilty plea?*

*Answer 2: No.*

Jesse Luna next argues his third trial counsel, Timothy Trageser, performed

deficiently when Trageser failed to file a written motion to withdraw his guilty plea after

making the motion orally. The State responds that the result would not have been

different if counsel had prepared a written motion because the court found no manifest

injustice occurred when the defendant entered his guilty plea. We conclude Trageser did

not perform ineffectively because the oral motion sufficed to place the motion before the

trial court and the outcome of the motion would not have differed with a written motion.

19

Timothy Trageser appeared as counsel for Jesse Luna on April 21, 2015, two days before the first scheduled sentencing hearing. Jesse Luna did not provide the court with a transcript from the April 23, 2015 hearing when Timothy Trageser requested a continuance of the sentencing hearing. During the April 23 hearing, Trageser may have mentioned an intent to file a motion to withdraw the guilty plea.

At the rescheduled sentencing hearing, on May 7, 2015, the trial court questioned Timothy Trageser regarding Jesse Luna's desire to withdraw his guilty plea. Trageser responded that, after reviewing the case files and speaking with Luna and his previous counsel, Eric Christianson, he discerned a need for a fact-finding hearing on the motion to withdraw the plea. According to Trageser, the motion presented a genuine issue of fact with respect to Luna's understanding of the recommended sentence and the difference between concurrent and consecutive sentences. According to Luna, Christianson told him that, despite the plea agreement, Luna could still request concurrent sentences.

At the May 7 sentencing hearing, the trial court concluded that a fact-finding hearing would not change its ruling on a motion to withdraw the plea. The court resolved that Jesse Luna did not satisfy the manifest injustice test for withdrawing a plea. The plea agreement language regarding consecutive sentences contained no ambiguity, and, during the plea colloquy, the trial court unmistakably warned Luna of consecutive sentences.

We previously reviewed the rules and principles surrounding a claim of ineffective assistance of counsel. Timothy Trageser's performance did not fall below an objective standard of reasonableness based on the circumstances. Trageser had approximately two weeks from his appointment to prepare for the sentencing hearing. Trageser apprised the court that Luna may want to withdraw his plea. He reviewed the files and spoke with Luna and his previous counsel, Eric Christianson. Once Trageser possessed the important facts, he believed a fact-finding hearing was appropriate and requested one at the sentencing hearing. Based on these circumstances, the decision not to file a written withdrawal of guilty plea prior to the sentencing hearing was objectively reasonable.

Jesse Luna and Timothy Trageser, on behalf of Luna, in essence forwarded an oral motion to withdraw the guilty plea. CrR 4.2(f) controls withdrawal of guilty pleas.

> **(f) Withdrawal of Plea.** The court shall allow a defendant to withdraw the defendant's plea of guilty whenever it appears that the withdrawal is necessary to correct a manifest injustice. If the defendant pleads guilty pursuant to a plea agreement and the court determines under RCW 9.94A.431 that the agreement is not consistent with (1) the interests of justice or (2) the prosecuting standards set forth in RCW 9.94A.401-.411, the court shall inform the defendant that the guilty plea may be withdrawn and a plea of not guilty entered. If the motion for withdrawal is made after judgment, it shall be governed by CrR 7.8.

Nothing in CrR 4.2(f) requires the motion to withdraw be in writing. Although Luna sought withdrawal before entry of judgment, nothing in CrR 7.8, requires a motion be in writing. Although Washington courts have never expressly ruled that an oral motion suffices to properly bring a request before the trial court, other jurisdictions have

21

recognized the validity of oral motions. *Osowski v. AMEC Construction Management, Inc.*, 69 A.D.3d 99, 887 N.Y.S.2d 11, 16 (2009); *Will of Mingo v. Mingo*, 743 So. 2d 433, 435 (Miss. Ct. App. 1999); *Stern v. Dill*, 442 N.W.2d 322, 325 (Minn. 1989); *Ex parte Tampling Tile Co. v. J&J Construction*, 551 So. 2d 1072, 1074 (Ala. Civ. App. 1989); *Gregg Kendall & Associates, Inc. v. Kauhi*, 53 Haw. 88, 488 P.2d 136, 139 (1971). While all cited decisions rest on the civil side of the law, we see no need to distinguish, for purposes of the acceptability of oral motions, criminal from civil cases.

Jesse Luna may argue that, even if trial counsel's performance in failing to file a motion to withdraw the plea before the sentencing hearing was not deficient, counsel committed professional error by failing to file a written motion after the sentencing hearing. We disagree. The trial court, during the sentencing hearing, already addressed the merits of the motion to withdraw. The trial court's reasoned decision would not have changed by the filing of a motion after the sentencing. Trial counsel does not perform deficiently by failing to file a superfluous motion.

Jesse Luna argues that a different standard applies to the withdrawal of a plea depending if the defendant brings the motion before or after sentencing. Presumably, he suggests that his burden after entry of the judgment would wane. Under CrR 4.2(f), the movant, before sentencing, must establish "manifest injustice." Under CrR 7.8(b)(5), the court may grant relief from the judgment on "[a]ny other reason justifying relief from the operation of the judgment."

22

Jesse Luna's argument benefits him none. Under CrR 7.8(b), final judgments should be vacated or altered only in those limited circumstances when the interests of justice most urgently require. *State v. Shove*, 113 Wn.2d 83, 88, 776 P.2d 132 (1989); *State v. Smith*, 159 Wn. App. 694, 700, 247 P.3d 775 (2011). This standard echoes and may be more stringent than the manifest injustice measurement. Also, CrR 7.8(b)(5) does not apply when the circumstances used to justify the relief existed at the time the judgment was entered. *State v. Smith*, 159 Wn. App. at 700. Any motion to vacate the final judgment would be based on circumstances already existing at the time.

*Issue 3: Whether the trial court committed error when refusing to schedule a hearing on Luna's oral motion to withdraw his guilty plea?*

*Answer 3: No.*

Jesse Luna now moves his focus from the performance of trial counsel to rulings by the trial court. Luna argues that a fact-finding hearing was necessary before the trial court denied his motion to withdraw his plea. He contends the trial court needed to resolve what his defense counsel told him regarding "concurrent" and "consecutive" sentences. The State argues that the trial court did not abuse its discretion when it declined to hold a fact-finding hearing because the court had all necessary facts before it. We agree with the State.

In addressing Jesse Luna's contention, we must precisely delineate what he claims counsel Eric Christianson told him on the day of the guilty plea. Luna does not contend

23

that Christianson told him that he would receive concurrent sentences. Luna does not contend he was confused between the meaning of the terms "consecutive" and "concurrent." He contends that his counsel told him that, despite the plea agreement, he may request that the court grant him concurrent sentences. But, in fact, assuming Christianson delivered such advice, the advice was accurate. Luna, during his allocution, could and did ask the sentencing court to run the sentences concurrent. The trial court also recognized it need not accept the recommendation for a thirty-year sentence.

The trial court did not need to resolve any dispute in facts. Even under Jesse Luna's version of the facts, Eric Christianson gave no misleading advice. Luna supplies no legal authority that demands that the trial court conduct a factual hearing when reviewing a motion to withdraw a guilty plea when the court need not resolve any disagreement in the facts.

We also note that Jesse Luna could not be confused about the meaning of the terms "consecutive" and "concurrent," because the plea agreement specifically referred to a thirty-year sentence. For Luna to receive a thirty-year sentence, the ten-year sentences had to run consecutively.

An appellate court reviews a trial court's decision to grant or deny a motion to withdraw a guilty plea for an abuse of discretion. *State v. Forest*, 125 Wn. App. 702, 706, 105 P.3d 1045 (2005). A trial court abuses its discretion when it bases its decision

24

on untenable grounds or reasons. *State v. Powell*, 126 Wn.2d 244, 258, 893 P.2d 615 (1995).

Under CrR 4.2(f), the court shall allow a defendant to withdraw the defendant's guilty plea whenever it appears that the withdrawal is necessary to correct a manifest injustice. A manifest injustice is "an injustice that is obvious, directly observable, overt, not obscure." *State v. Taylor*, 83 Wn.2d 594, 596, 521 P.2d 699 (1974). Withdrawal may be necessary to correct a manifest injustice when the defendant establishes (1) he or she received ineffective assistance of counsel, (2) the plea was not ratified by the defendant or one authorized by him or her to do so, (3) the plea was involuntary, or (4) the plea agreement was not kept by the prosecution. *State v. Quy Dinh Nguyen*, 179 Wn. App. 271, 282, 319 P.3d 53 (2013). The defendant has the burden of establishing manifest injustice. *State v. Quy Dinh Nguyen*, 179 Wn. App. at 282-83.

The trial court did not abuse its discretion when it declined to hold a fact-finding hearing and instead denied Jesse Luna's oral motion to withdraw his guilty plea. The court recalled the circumstances leading to the plea agreement, which included Luna handing a note to his attorney, who then passed the note to the prosecutor, ultimately resulting in a proposed plea agreement. Luna's counsel, Eric Christianson, advised the court of on-going negotiations. During the plea hearing, the trial court carefully discussed the plea agreement with Luna and read in Luna's hearing all of the recommendations contained therein. The joint sentencing recommendation in paragraph

25

6(h) declared a thirty-year exceptional sentence, with three consecutive ten-year sentences for each crime. This language in the plea agreement was bold and underlined.

*Issue 4: Whether the trial court abused its discretion when it did not consider Luna's pro se request for a "same criminal conduct" analysis during the course of his allocution at the sentencing hearing?*

*Answer 4: No.*

We phrase issue four as formulated by Jesse Luna. Nevertheless, the issue's wording assumes erroneous facts. During his allocution, Jesse Luna complained about consecutive sentences. Nevertheless, he never requested that the trial court engage in a same criminal conduct analysis.

On appeal, Jesse Luna contends that the sentencing court did not exercise its discretion when it failed to conduct a "same criminal conduct" analysis under RCW 9.94A.589(1)(a). Nevertheless, Luna fails to inform this court how a same criminal conduct analysis would benefit him. The State responds that the trial court was not required to exercise its discretion in determining whether the crimes of burglary and theft were the same course of conduct because (1) Luna agreed to consecutive sentences on all three charges in exchange for the State dismissing the charges that would result in a persistent offender sentence, and (2) Luna held the burden to prove the charges constituted the same criminal conduct, which he failed to do. We agree with the State and add that Luna waived this assignment of error.

26

The failure of a defendant to argue at sentencing that two crimes constituted the same criminal conduct waives the argument on appeal. *State v. Rattana Keo Phuong*, 174 Wn. App. 494, 547, 299 P.3d 37 (2013). When a defendant fails to request the court to exercise its discretion in sentencing, any error in that regard is waived. *In re Personal Restraint of Goodwin*, 146 Wn.2d 861, 875, 50 P.3d 618 (2002).

## Statement of Additional Grounds

Jesse Luna presents three additional grounds on which he seeks vacation of the judgment of guilty. He contends that his first trial counsel, Kevin Griffin, asked him to lie so that Griffin could withdraw from the case on ethical grounds. Statement of additional grounds (SAG) at 1. Luna contends his second trial counsel was ineffective when he refused to attach a supporting letter from Spokane Police Chief Frank Straub in support of his motion to dismiss. SAG at 1. This letter is not in the record. Finally, he argues that his second trial counsel, Eric Christianson, asked him to say "some (crazy) statements" so that Christianson could request a mental evaluation. SAG at 2. This court cannot address any of the arguments because they depend on facts outside the record.

## CONCLUSION

We affirm the trial court's denial of Jesse Luna's motion to withdraw guilty plea and affirm the trial court's judgment and sentence.

27

No. 34183-6-III
*State v. Luna*

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Fearing, C.J.

WE CONCUR:

_____
Korsmo, J.

_____
Pennell, J.

28